10

FILED

SEP 13, 2011

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

POSTED ON WEBSITE

NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

In re

Raylene Therese Altmiller-Rubio
and David Rubio,

Debtors.

Case No. 08-17274-B-13

DC No. DFE-2
DC No. MHM-2

### MEMORANDUM DECISION REGARDING OBJECTIONS TO AMENDED CLAIM OF EXEMPTION

This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

D. Max Gardner, Esq., appeared on behalf of the debtors, Raylene Therese Altmiller-Rubio and David Rubio.

Gregory Mann, Esq., appeared on behalf of the State of California, Department of Fair Employment and Housing.

Kristen M. Gates, Esq., appeared on behalf of the chapter 13 trustee, Michael H. Meyer, Esq.

Before the court is an objection filed by the chapter 13 trustee (the "Trustee") to an amended claim of exemption filed by Raylene Altmiller-Rubio and David Rubio (the "Debtors"). The Trustee objects to the Debtors' exemption of the proceeds from Mr. Rubio's pre-petition cause of action for personal injury (the "Objection"). The Trustee is joined in the Objection by the State of California, Department of Fair

Employment and Housing ("DFEH")[1] (the Trustee and DFEH are collectively referred to herein as "Objectors"). The Objectors contend that the personal injury proceeds are not necessary for the support of the Debtors. For the reasons set forth below, the Objection will be overruled and the exemption will be allowed.

This memorandum decision contains the court's findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52(a), made applicable to this contested matter by Federal Rule of Bankruptcy Procedure 7052. The court has jurisdiction over this matter under 28 U.S.C. § 1334, 11 U.S.C. § 522[2] and General Orders 182 and 330 of the U.S. District Court for the Eastern District of California. This is a core proceeding as defined in 28 U.S.C. §§ 157(b)(2)(A) & (B).

**Background and Findings of Fact.**

In December 2007, David Rubio was involved in an automobile accident with a vehicle owned and operated by the Kern High School District ("KHS"). Mr. Rubio's vehicle, a pickup, was hit from behind by a school bus traveling at a substantial speed. The pickup was demolished. Mr. Rubio sustained significant physical injuries to his back, neck, and legs (the "P.I. Claim").[3] Mr. Rubio was treated at a local hospital and has since undergone extensive treatment and rehabilitation for his injuries. Mr. Rubio no longer runs the business he owned before the bankruptcy was filed. At the commencement of this case, he was unemployed and unable to seek gainful

---

[1] DFEH represents the interest of creditor Christina McQuiston who has a claim for $160,000 based on the settlement, which this court approved earlier, of a dispute involving alleged violations of the California Fair Employment and Housing Act.

[2] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated *after* October 17, 2005, the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, Apr. 20, 2005, 119 Stat. 23.

[3] Mr. Rubio also sustained property damage on account of his vehicle. That damage was substantially compensated through insurance. There is no evidence to suggest that any of the money at issue here relates to compensation for property damages.

employment because of his injuries.

This bankruptcy was filed in November 2008. The Debtors listed Mr. Rubio's P.I. Claim on schedule B with an estimated value of $0. The Debtors did not initially exempt the P.I. Claim on schedule C. In December 2008, Mr. Rubio filed a civil action against the KHS to liquidate the P.I. Claim in the state court. Based on the Debtors' schedules, at the commencement of the case, they owned two parcels of real property, their residence and a rental property, valued collectively at $394,500. Both properties are heavily encumbered with mortgage debt and the rental property has since been surrendered to the creditors. The Debtors reported personal property assets worth $97,590.70, including two life insurance policies valued at $78,000.

According to schedule I, Mrs. Rubio was employed as a licensed pharmacist at the commencement of the case with a gross income of $11,000 per month. Mr. Rubio was unemployed with no reported income. After the payroll deductions, Mrs. Rubio's net monthly income was $7,803 per month. On schedule J, the Debtors reported monthly expenses, including the mortgage payment on their residence, in the amount of $6,848.35. Their monthly net income was stated to be $954.86. According to schedule J, the Debtors were not then paying for their medical insurance, it was provided by Mrs. Rubio's employer.

The Debtors' chapter 13 plan was confirmed on March 30, 2009 (the "Plan"). The Plan requires monthly payments to the Trustee in the amount of $954 for a period of five years. The Plan provides for surrender of the rental property, maintenance of two automobile leases, and payment of priority tax claims. The Plan provides for a 1% distribution to unsecured creditors with claims estimated at $72,251 (exclusive of the McQuiston claim, *see* n.1, supra). Because the P.I. Claim had not yet been adjudicated, the Plan included a provision, negotiated with the Trustee, which contemplated, *inter alia*, that the Debtors would continue to prosecute the P.I. Claim in the state court until it was settled or reduced to a judgment, that they could thereafter amend their exemption to include any proceeds of the P.I. Claim, and that the Trustee

could then object to the amended exemption.

In January 2010, this court granted the Debtors' motion to approve a settlement of the P.I. Claim in the amount of $80,000. The settlement contemplated that litigation fees and costs would be paid from the proceeds. The balance, in the amount of $41,696.44 (the "P.I. Proceeds") was supposed to be turned over to Debtors' counsel to hold pending resolution of the exemption issue as provided in the Plan.[4] In July 2010, the Debtors amended their exemption schedule C to exempt the P.I. Proceeds (the "P.I. Exemption"). In support of the P.I. Exemption, the Debtors filed a declaration of David Rubio which summarized the background of the P.I. Claim and Mr. Rubio's medical treatment. The Objectors timely filed their Objections to the P.I. Exemption.

At trial, the Debtors offered testimony regarding Mr. Rubio's various medical issues. Since commencement of the bankruptcy case, Mrs. Rubio, a licensed pharmacist, lost her job. She has taken a new job with a substantially lower salary, but she no longer has employer-funded health insurance coverage for Mr. Rubio. The collective financial impact of Mrs. Rubio's job change alone was about $800 per month in lost revenue and increased health insurance costs.

When the Debtors finish their Plan, they will be about 60 years old. They have two IRA accounts worth approximately $80,000. Mr. Rubio is unemployed and unable to perform meaningful work due to his physical condition. He has difficulty walking, has consistent pain in his back, and takes a long list of medications. To help manage the pain, Mr. Rubio sees a chiropractor two or three times per week at a cost of $77 per visit. Mr. Rubio also sees an orthopedic specialist. Mr. Rubio suffers from deterioration of the spine which causes substantial pain. He also suffers from an injury to the knee which he attributes to the accident. Mr. Rubio's treating physician had recommended steroid injections to help alleviate the pain condition. Those treatments

---

[4] The ruling approving the settlement is reflected in the court's minutes. However, the Debtors never submitted an order. The settlement was implemented without an order formally approving it.

were likely to cost tens of thousands of dollars. There was no evidence to show what, if any, of those treatments would be covered by health insurance. The Debtors contend that they require the P.I. Proceeds to help fund, *inter alia*, the ongoing medical treatments for Mr. Rubio.

There was testimony from Mr. Rubio which suggests that some of his pain and discomfort may be the result of a pre-accident degenerative condition in his back. There is no evidence to directly connect any of Mr. Rubio's residual physical problems with the automobile accident, but he was seriously injured in the accident and the P.I. Proceeds represent compensation for that injury. The court accepts the inference that the automobile accident aggravated or advanced in some way any pre-existing conditions Mr. Rubio may have had. The fact that he cannot work and will need ongoing expensive treatments remains unchanged.

**Issues Presented.**

The Debtors have claimed an exemption of the P.I. Proceeds pursuant to CCP § 704.140 which reads, in pertinent part:

> (a) [A] cause of action for personal injury is exempt without making a claim.
>
> (b) [A]n award of damages or a settlement arising out of personal injury is exempt *to the extent necessary for the support of the judgment debtor and the spouse and dependents of the judgment debtor.* (Emphasis added.)

The Objection raises only one issue, whether the P.I. Proceeds are "necessary for the support" of the Debtors within the meaning of CCP § 704.140.

**Analysis and Conclusions of Law.**

**Burden of Proof.** There is substantial disagreement between the parties over the burden of proof, production, and persuasion. The Debtors' P.I. Exemption is supported solely by the Debtor's testimony and the documents in the record. They testified that some medical records had been offered or provided to the Trustee for review, but at trial they did not submit evidence of any outside medical records or expert testimony regarding Mr. Rubio's health and their future financial condition.

5

The Trustee contends that the Debtors have not come forward with enough evidence to support the P.I. Exemption. He argues that the Debtors have the burden of establishing their complete financial picture. DFEH contends that the Debtors' own schedules show that the P.I. Exemption is not appropriate based on their financial circumstances at the commencement of the case. However, neither of the Objectors offered any rebuttal witnesses nor evidence. The outcome of this dispute essentially turns on the question of who was able to sustain their burden of proof.

It is well accepted in the Ninth Circuit that an exemption claim is presumptively valid. *Carter v. Anderson (In re Carter),* 182 F.3d 1027, 1029-30, n.3 (9th Cir. 1999). Once the exemption has been claimed, "the objecting party has the burden of proving that the exemptions are not properly claimed." Rule 4003(c); *Gonzalez v. Davis (In re Davis),* 323 B.R. 732, 736 (9th Cir. BAP 2005) (Klein, J., concurring). Even if the presumption is rebutted with evidence from the objecting party, forcing the debtor to come forward with unequivocal evidence to support the exemption, "[t]he burden of persuasion, however, always remains with the objecting party." *Carter,* 182 F.3d at 1029 n.3.

The Objectors urge the court to shift the burden of proof to the Debtors on the theory advanced by J. Klein in the concurring opinion to *Davis,* 323 B.R. at 740-45 (the burden of proof applicable to a state law exemption is a substantive issue that, under state law, must be carried by the judgment debtor, citing *Raleigh v. Ill. Dep't of Rev.,* 530 U.S. 15 (2000)). The court declines the Objectors' invitation to disregard Rule 4003(c) and make new law for two reasons. First, J. Klein's concurring opinion, which thoughtfully questions the application of Rule 4003(c), has been in the record for more than six years, yet it has never been adopted by the Circuit as a shift away from the fundamental rule stated in *Carter*. Second, based on the evidence presented by the Debtors, and the lack of any rebuttal evidence by the Objectors, the court is satisfied that the Debtors have carried the burden of proof, even if it was appropriate that they be required to do so.

**The P.I. Proceeds Are Necessary to the Support of the Debtors.**

To begin the analysis, it is established that a debtor's exemption rights under state law are determined as of the date of the petition. *Moffat v. Habberbush (In re Moffat)*, 119 B.R. 201, 204, n.3 (9th Cir. BAP 1990). Here, there is no dispute that the Debtors had a right to exempt the initial P.I. Claim. The P.I. Claim arose pre-petition. It was disclosed on the Debtors' schedules even though it was then unliquidated. Prior to its settlement, the P.I. Claim was exempt even without a formal exemption claim being made on the bankruptcy schedules. CCP § 704.140(a).

However, CCP § 704.140(a) & (b) are not mutually exclusive. CCP 704.140(a) does not allow for the exception of an unliquidated personal injury claim in its entirety. Once the P.I. Claim was settled and reduced to cash proceeds, the nature of the "exempt" property shifted from the unliquidated claim to the cash proceeds themselves. The exemption right remains unchanged, but the analysis shifted from CCP § 704.140(a) to the "necessary for support" inquiry under § 704.140(b). *Gose v. McGranahan (In re Gose)*, 308 B.R. 41, 48 (9th Cir. BAP 2004). The Debtors had a right to amend their exemption schedule to add the P.I. Proceeds, so long as the amendment was made in good faith and without prejudice to third parties. *Arnold v. Gill (In re Arnold)*, 252 B.R. 778, 784 (9th Cir. BAP 2000). Bad faith is not an issue here; neither the Trustee, nor DFEH, contends that the Debtors amended their exemption in bad faith. Likewise, there is no prejudice here because the P.I. Claim was disclosed in the Debtors' original schedules and the Plan provides for amendment of the exemption after the P.I. Claim was liquidated.

When the debtor is claiming an exemption under state law, then the bankruptcy court must look to applicable state law to determine the scope of the exemption. *Sylvester v. Hafif (In re Sylvester)*, 220 B.R. 89, 91 (9th Cir. BAP 1998), citing *In re Golden*, 789 F,2d 698, 700 (9th Cir. 1986). Under the Bankruptcy Code and applicable California law, exemptions are to be broadly and liberally construed in favor of the debtor. *In re Gardiner*, 332 B.R. 891, 894 (Bankr. S.D. Cal. 2005).

When, as here, an exemption of personal injury proceeds is claimed under CCP § 704.140, two criteria must be satisfied. First, the money which is subject to the exemption must arise as a result of a "personal injury" to the claimant. Second, the exemption may only be allowed to the extent that the money is "necessary for the support" of the claimant. CCP § 704.140(b). *Sylvester*, 220 B.R. at 91.

The term "necessary for the support of the debtor" is not well defined in California law. However, that language does appear in other exemption statutes and has been considered by the courts in similar contexts. In *In re Moffat*, the BAP considered the "necessary for the support" term found in CCP § 704.100, which allows for exemption of an unmatured life insurance policy (CCP § 704.100(a)) and the proceeds from a matured life insurance policy. CCP § 704.100(b). The court in *Moffat* affirmed the bankruptcy court's decision disallowing the exemption of life insurance proceeds in whole on the grounds that the money was not necessary to the debtor's support.

On the eve of bankruptcy the debtor in *Moffat* had encumbered the family residence, thus increasing the payment due on that claim, in order to purchase the life insurance annuity. The annuity was then transferred to a living trust in an effort to increase the debtor's exempt property and to protect it from creditors. Noting that the debtor's exemption rights under state law are determined as of the date of the petition, the court identified factors which are relevant in determining the extent of the debtor's exemption under the "necessary for support" standard. *In re Moffat*, 119 B.R. at 204, n.3. Those factors included "anticipated living expenses and income; the age and health of the debtor and his or her dependents; the debtor's ability to work and earn a living; the debtor's training, job skills and education; the debtor's other assets and their liquidity; the debtor's ability to save for retirement; and any special needs of the debtor and his or her dependents." *Id.* at 206 (citation omitted).

The *Moffat* court considered the debtor's assets, income, and expenses in affirming the bankruptcy court's decision. It found that there was no evidence that the

debtor's income, of more than $5,000 per month from his orthodontist practice, was insufficient to meet his expenses. Considering the age and medical condition of the debtor, it found no indication that the debtor's income would decrease. The court also noted the debtor had a significant exempt asset in the home. *Id.*

The Ninth Circuit Bankruptcy Appellate Panel in *Davis* considered the "necessary for support" issue in the context of the debtor's exemption of retirement accounts. The court applied the *Moffat* factors to reverse as clearly erroneous the bankruptcy court's decision to allow the exemption, The objecting trustee introduced at trial expert testimony of an accountant who carefully analyzed the ophthalmologist-debtor's income and expenses during the debtor's projected work life and retirement. Based thereon, the trustee established that the substantial retirement fund was not "necessary" to the debtor's support.

Here, the facts as offered by the Debtors are significantly different from those found in both *Moffat* and *Davis*. The Debtors do not have an unusually large estate, there is no non-exempt equity in their home, and their retirement assets are modest in light in their age and the likelihood that Mr. Rubio may never again be able to generate a substantial salary. The facts do not suggest that the Debtors have the ability to fund a substantial retirement plan or significantly increase their available assets after the bankruptcy is finished. The amount at issue here, approximately $42,000, is not overly generous in light of the cost of medical treatments and rehabilitation which Mr. Rubio is facing. It is true that Mrs. Rubio is a licensed pharmacist with the ability to earn a comfortable salary until retirement, but that salary has been reduced substantially since the bankruptcy was filed and she now must pay for Mr. Rubio's medical insurance. The evidence does not suggest that Mrs. Rubio alone can pay for Mr. Rubio's ongoing treatment costs. The Objectors offered nothing by way of a financial analysis, as did the trustee in *Davis*, to show that the Debtors could support themselves, and pay for Mr. Rubio's medical care, without the P.I. Proceeds.

Considering all of the *Moffat* factors, the court adopts the Rubios' discussion as

set forth in their post-trial brief. Construing the P.I. Exemption broadly and liberally in favor of the Debtors, the court is satisfied, from the evidence presented, that the P.I. Proceeds are necessary for the support of the Debtors within the meaning of CCP § 704.140(b).

The Objectors contend that the court must make the "necessary for support" determination based solely on the information in the Debtors' schedules. At the time the Debtors filed their petition, based on schedules I and J, Mrs. Rubio's income was apparently sufficient to support the Debtors, and pay for Mr. Rubio's medical care, even with Mr. Rubio's unemployment. The Objectors suggest that schedules I and J should be the end of the inquiry. Nothing in the applicable law suggests that the "snapshot" approach is appropriate here. Indeed, the *Moffat* factors discussed above compel a "forward looking" analysis. Relevant factors such as "anticipated living expenses," "ability to earn a living," "ability to save for retirement," and "special needs and the debtors and/or their dependents" simply do not fit into a "snapshot" framework. The right to claim the P.I. Exemption is determined as of commencement of the bankruptcy, but the court may look to changes in the Debtors' circumstances in determining the amount of exemption to allow.

**Conclusion.**

Based on the foregoing, the court is persuaded that the P.I. Proceeds are "necessary for the support" of the Debtors in their entirety. The Objection filed by the Trustee and joined by DFEH will be overruled.

Dated: September 13, 2011

W. Richard Lee
United States Bankruptcy Judge